IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

JANET S. AYERS                                                                              PLAINTIFF

V.                                                              CIVIL ACTION NO. 2:06CV85-P-A

JO ANNE B. BARNHART,
Commissioner of Social Security                                            DEFENDANT

## REPORT AND RECOMMENDATION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Janet S. Ayers for period of disability and disability insurance benefits under Title II of the Social Security Act. The district court's jurisdiction over plaintiff's claim rests upon 28 U.S.C. § 1331.

## STATEMENT OF THE CASE

Plaintiff Janet S. Ayers was born on November 31, 1958, and was forty-six years of age at the time of the decision from which she now appeals. She possesses a high school education and also completed at least two years of university study. Her past relevant work includes that of an airline baggage handler and dispatcher. She protectively filed her application for disability insurance benefits on October 30, 2001, alleging that she became disabled on July 31, 2001, due to fibromyalgia, Epstein Barr syndrome, chronic immune dysfunction, hernia, Raynaud's syndrome, mitral valve prolapse, and hypertension.

Her claim was denied initially and on reconsideration, and plaintiff requested a hearing before an administrative law judge. The plaintiff's first hearing on this matter was held before an administrative law judge (ALJ) on November 5, 2003, where she was represented by counsel. The ALJ issued his original decision on February 9, 2004, and found that the plaintiff was not

disabled within the meaning of the Social Security Act because none of the work-related activities associated with her past relevant work as a dispatcher were precluded by her residual functional capacity, which the ALJ found to be light.[1]

The plaintiff requested a review of this decision by the Appeals Council, and the Appeals Council remanded the case to the ALJ with direct instructions on April 20, 2004. In general terms, the Appeals Council found that the original decision lacked adequate explanation for discounting the opinions of plaintiff's treating physicians Drs. William Herring and Tulio Bertorini and for deeming the plaintiff's subjective complaints to be inconsistent with the objective evidence. The Appeals Council also faulted the decision for mentioning but not assessing the testimony of Earl Ayres, the plaintiff's husband. Most importantly, the Appeals Council stated that the decision indicates that plaintiff possesses a RFC for light work but that "the decision does not contain sufficient rationale with specific references to evidence of record in support of the assessed limitations." (R. at 58.) The remand order instructs the ALJ to properly consider and evaluate these deficient areas upon remand and to "[f]urther, if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's fibromyalgia (20 CFR 404.1527(f) and Social Security Ruling 96-6p)." (*Id.*)

The ALJ conducted a second hearing on October 21, 2005, and issued the corresponding decision on May 14, 2005, which again found that the plaintiff was not disabled under the Act due to the fact that none of the work-related activities associated with her past relevant work as a

---

[1] Though the decision does not specify the category of RFC, the ALJ deemed plaintiff capable of lifting and carrying twenty pounds occasionally, ten pounds frequently plus standing, walking and sitting six hours in an eight-hour day, which amounts to an RFC for light work. (R. at 46.)

2

dispatcher were precluded by her residual functional capacity, which the ALJ found to be the full range of sedentary work. The plaintiff's request for a review of the second decision was denied by the Appeals Council on March 24, 2006; thus, the ALJ's decision became the final decision of the Commissioner and was appealed to this court.

Plaintiff's brief asserts that the ALJ erred in (1) failing to accord the proper weight to treating physicians and others, (2) failing to consider the requirements of the plaintiff's past relevant work of dispatcher, (3) failing to consider whether plaintiff could perform the job requirements of dispatcher or any other job on a sustained basis, and (4) failing to properly consider the evidence of record in that he was explicitly searching for objective evidence when Firbromyalgia is a diagnosis of exclusion, and therefore there exist no objective clinical findings to support such diagnosis. The plaintiff's argument centers around the fact that the ALJ deemed the plaintiff less than credible due to a lack of objective medical evidence, that the opinions of her treating physicians as to her RFC received less than controlling weight, and that the ALJ – for a second time – created the plaintiff's RFC without the aid of any evidence of record except for that which he discounted.

The medical evidence, the ALJ's decision and, consequently, this recommendation center around plaintiff's fibromyalgia diagnosis. Fibromyalgia is similar to chronic fatigue syndrome with which it shares multiple features and a similar diagnosis procedure, best described as a process of elimination. *See* Social Security Ruling 99-2p. The causes of fibromyalgia are unknown, and "of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). However, one symptom that separates

3

fibromyalgia from other rheumatic impairments is the existence of eighteen fixed locations on the body that, when pressed firmly, result in the flinching of the patient; a patient must only possess eleven such fixed points in addition to displaying other symptoms to be diagnosed with fibromyalgia under the American College of Rheumatology guidelines. *Id.*

## DISCUSSION

A.  Standard of Review

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence in the record as whole and whether the Commissioner used the correct legal standard. *Legget v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390 (1971), *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103, 108 (2000)). However, a decision is not substantially justified if the facts are not fully and fairly developed. *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (citing *Newton v. Apfel*, 208 F.3d 448, 458 (5th Cir 2000)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not re-weigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the

4

evidence leans against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

      B.      <u>Five-Step Sequential Evaluation Process</u>

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels, the burden then shifts to the Commissioner at step five. *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). First, plaintiff must prove she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1527. Second, the plaintiff must prove her impairment or combination of impairments is "severe" in that it has more than a minimal effect on the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1527; *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). At step three, the ALJ must conclude the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 404.1520(d). Fourth, the plaintiff bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work. 20 C.F.R. § 404.1520(e). If the plaintiff is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work. 20 C.F.R § 404.1520(f). If the Commissioner proves other work exists which the plaintiff can

perform, the plaintiff must then prove that she cannot, in fact, perform that work. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

      C.      <u>Issues Considered</u>

The court appreciates that physicians reach a diagnosis of fibromyalgia via a process of elimination, and thus the normal type of objective evidence that would tend to demonstrate the existence of an impairment is not possible under this circumstance. The court realizes that the ALJ found that the plaintiff suffered from an impairment or combination of impairments considered severe but that the decision was careful not to specifically discount the existence of fibromyalgia and only specifically discounted much of the plaintiff's, her husband's and their housekeeper's testimony, in addition to discounting most of the opinions of her treating physicians. Inferentially, however, the opinion largely discounts the existence of fibromyalgia itself.

The decision states that it cannot give controlling weight to the treating physicians' opinions where those opinions are not supported by medically acceptable clinical and laboratory diagnostic techniques and explicitly affords the plaintiff's treating physicians less than controlling weight due to the fact that the record lacks objective medical evidence to support their opinions. Specifically, the ALJ found that the treating physicians' opinions were based upon the plaintiff's subjective complaints and that "there exist good reasons for questioning the reliability of the claimant's subjective complaints." (R. at 16.) The ALJ found the plaintiff to be less than credible based upon a lack of objective medical evidence in addition to conflicts with the objective evidence. Thus, this appeal presents the court with a conundrum: the medical community accepts that fibromyalgia, which is largely based on the subjective complaints of a

6

patient, can result in significant pain and loss of certain abilities, yet the Social Security Act and corresponding regulations require that an impairment be objectively ascertainable in order to award benefits to the individual suffering from said impairment.

Generally "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995). An ALJ may reject or assign little weight to the opinion of a treating physician when good cause is shown; good cause may exist "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."[2] *Newton v. Afpel*, 209 F.3d 448, 456 (5th Cir. 2000) (internal citations omitted) (emphasis added).

In order for the ALJ's assessment of a plaintiff's residual functional capacity to be sustained, the ALJ must "consider all allegations of physical and mental limitations or restrictions" and include within his decision "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." Social Security Ruling 96-8p. The ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC," *id.,* and generally he or she should request a medical source statement from either the claimant's treating source or a consultative examiner for inclusion within the record as these

---

[2]In *Newton*, the Fifth Circuit held that, "absent reliable medical evidence from a treating or examining physician," the ALJ may reject a treating physician's opinion "only if the ALJ performs a detailed analysis of the treating physician's view under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453.

opinions discuss the claimant's physical or mental abilities as they relate to performing work-related activities on a sustained basis. Social Security Ruling 96-5p. However, an ALJ's failure to acquire a medical source statement does not warrant automatic reversal; rather, the analysis turns to whether, without such a statement, substantial evidence supports the ALJ's residual functional capacity determination.[3]

The Social Security Administration recognizes the fact that fibromyalgia is indeed an impairment that may be severe in nature and that its resulting pain may be disabling as defined by the Social Security Act. The court further finds that the Act should not be construed in such a way as to reject from its benefits all individuals suffering from either fibromyalgia, chronic fatigue syndrome or like impairment.[4] In response to this similar complication, sister courts have found that a record of the plaintiff demonstrating at least eleven trigger points, or fixed locations, as described above constitutes clinically demonstrable evidence of fibromyalgia. *See, e.g., Gister v. Massanari*, 189 F.Supp. 2d 930, 934 (E.D. Wis. 2001).

---

[3]*Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (pursuant to 5th Cir. R. 47.5, this opinion was not published and is not considered precedent within this circumstance but is considered persuasive authority). The Fifth Circuit has found substantial, supportive evidence as to a claimant's residual functional capacity where the ALJ can fully and fairly develop the record from lay and medical sources before him. *Id*. at *8. Conversely, in another case, the Circuit was unmoved by the ALJ's reliance on the plaintiff's testimony regarding his ability to work; notably, the ALJ "failed to consider . . . [plaintiff's] testimony regarding *limitations* in performing these tasks." *Ripley v. Chater*, 67 F.3d 552, 558 (5th Cir. 1995) (emphasis added). The *Ripley* court found the ALJ's decision was not supported by substantial evidence where "[t]he record includes a vast amount of medical evidence establishing that Ripley has a problem with his back. What the record does not clearly establish is the effect Ripley's condition has on his ability to work." *Id.* at 557.

[4]This finding is bolstered by the existence of a regulation on point discussing the way in which chronic fatigue syndrome should be evaluated. *See* Social Security Ruling 99-2p.

In the case *sub judice*, the records from the Mayo Clinic and Dr. Herring together demonstrate that the plaintiff exhibited eighteen to sixteen such fixed locations. (R. at 518, 566.) Thus, contrary to the ALJ's finding, the record does contain some medically acceptable clinical evidence of fibromyalgia. Furthermore, the record demonstrates that medically acceptable diagnostic techniques (*i.e.*, diagnosing by excluding all other possible sources, the demonstration of trigger points) were used in diagnosing the plaintiff with fibromyalgia, thus, the ALJ was not at liberty to simply discount the findings of her treating physicians.

More importantly, the decision finds: "fibromyalgia . . . relies heavily on the self-reported symptoms and subjective allegations. Yet, as discussed elsewhere in this decision there exist good reasons for questioning the reliability of the claimant's subjective complaints." (R. at 16.). These "reasons" for discrediting the plaintiff, however, were that plaintiff's assertions were not supported by the objective evidence. This type of logic is prime example of circular reasoning, and, because of its inherently flawed nature, the court finds that all of the findings rendered upon this logic are not supported by substantial evidence.[5] Consequently, the court finds that this action must be remanded in order for an ALJ to adequately analyze and explain the basis for discrediting the treating physicians and the plaintiff, bearing in mind that this court deems that the location of at least eleven trigger points – when occurring in connection with other common symptoms of fibromyalgia – constitutes clinically demonstrable evidence.

---

[5]In this Circuit, where an ALJ renders an unfavorable credibility determination, the determination will be upheld so long as the ALJ "weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). However, allowing simply *any* articulated reason to suffice would contravene the substantial-evidence standard.

Finally, the ALJ determined that plaintiff retained the residual functional capacity to perform the full range of sedentary work without any analysis and without the aid of any medical source statement regarding her physical *and* mental limitations that supported his finding. In regard to Dr. Herring's RFC assessment, the ALJ's decision rejected Dr. Herring's opinion on the basis that he limited the plaintiff to walking zero hours per day [which the ALJ stated was "absurd"] and lifting no more than five pounds, which conflicted with the plaintiff's testimony; however, neither the ALJ nor the defendant's brief mentioned that Dr. Herring placed a handwritten notation immediately beside that opinion stating that plaintiff could only walk short distances. Dr. Herring's opinion does not so egregiously conflict with the plaintiff's testimony nor the testimony of her husband and housekeeper. Furthermore, the Agency's medical consultants who issued previous RFC assessments did not limit the plaintiff's RFC to sedentary; as a consequence, these opinions cannot constitute substantial evidence. The court thus finds that the ALJ's RFC assessment is not supported by substantial evidence and that, upon remand, an ALJ should acquire other medical source statements in the event that the RFC provided by her treating physician is disregarded.

Based upon the foregoing, the court finds that this action should be reversed and remanded, and, consequently, will not address any remaining issues. The court further finds that, because the ALJ failed to substantively add much to those matters which the Appeals Council's remand order instructed him to analyze in more depth, this action should be remanded to different ALJ. The court finds that it may not be necessary for the new ALJ to conduct a third hearing upon remand, but the court certainly does not preclude such a hearing, as it may be required in order to address certain issues not reached in the former decisions.

**CONCLUSION**

The undersigned recommends that the Commissioner's final decision be reversed and remanded. The parties are referred to 28 U.S.C. §636(b)(1)(B) and FED. R. CIV. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten (10) days of this date and "a party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Association* , 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*) (citations omitted).

This, the 22nd day of January, 2007.

                                                       /s/ S. ALLAN ALEXANDER
                                                     UNITED STATES MAGISTRATE JUDGE